899 So.2d 783 (2005)
Floyd R. CLARK, Plaintiff-Appellant
v.
ACCO SYSTEMS, INC., Defendant-Appellee.
No. 39,532-CA.
Court of Appeal of Louisiana, Second Circuit.
April 6, 2005.
*785 Eskridge E. Smith, Jr., Bossier City, for Appellant.
Liskow & Lewis, by Thomas J. McGoey, II, New Orleans, for Appellee.
Before WILLIAMS, GASKINS and LOLLEY, JJ.
LOLLEY, J.
Floyd R. Clark appeals a judgment by the First Judicial District Court, Parish of Caddo, State of Louisiana, granting the motion for summary judgment filed by Acco Systems, Inc. For the following reasons, we affirm.

FACTS
Acco Systems, Inc. is an international company specializing in the fabrication and installation of conveyor systems for industrial facilities located in the United States and abroad. To facilitate its business, Acco employs two kinds of supervisors. Its "salaried superintendents" are considered a fixed expense, and they are paid a salary and benefits. Acco claims that it uses these salaried superintendents to fill its job supervision needs to the maximum extent possible. Acco also employs "non-salaried superintendents," who are employed as needed and are paid on an hourly basis for the time they actually work. They do not participate in Acco's benefit plan.
Acco obtained a contract to fabricate and install conveyor systems at the General Motors plant in Shreveport, Louisiana (the "GM plant"). Mike Gould was designated by Acco to be its site manager at the GM plant. According to Acco, on November 28, 2001, it hired Clark as a "non-salaried superintendent" for the GM plant project. It is undisputed that Clark did not have an employment contract for a specific period of timehe was an "at will" employee. Clark worked under Gould.
As stated by Acco, in March 2002, one of its "salaried superintendents," Melvin Melton completed a job in Brazil, and Acco made the decision to move Melton to the GM plant project (claiming that they would have been obligated to pay him anyway by virtue of his employment status). As a result of this move, Acco states that Clark was terminated and notified of his termination on March 8, 2002. Clark's duties were assumed by Melton. Clark complains, however, that he was actually terminated due to his job performance.
Clark sued Acco for wrongful termination and in tort, i.e., damage to his reputation. After a period of discovery, Acco filed its motion for summary judgment. A hearing was conducted, after which, the trial court granted Acco's motion for summary judgment. This appeal by Clark ensued.

DISCUSSION
On appeal, Clark raises only one assignment of error. He argues that the trial court erred in finding that the "at-will" doctrine permits an employer to terminate an employee for a reason that the employer knows to be false, and in failing to consider the extent to which the employment "at-will" doctrine would continue to shield an employer after termination of an employee.

Summary Judgment
Appellate courts review summary judgments de novo under the same criteria *786 that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342 (La.1991); Costello v. Hardy, XXXX-XXXX (La.01/21/04), 864 So.2d 129. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). A court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). Summary judgment procedure is now favored under our law. La. C.C.P. art. 966(A)(2).
The burden of proof remains with the mover. However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. Art. 966(C)(2).

Termination of an "At Will" Employee
Clark acknowledges that the "at-will" doctrine provides a "shield" to employers so significant that only a few instances provide exception to the protection. Here, Clark maintains, Acco fired him for a one reason and then later provided a false reason for his termination. In brief, Clark specifically states that he initially was told he was terminated because of the improper construction of some cantilevers on the GM plant project. Clark argues that he was not actually fired for "reduction in work force" reasons as claimed by Acco, but really he was the "sacrificial lamb" for the mistake he claims was made on the job. Clark contends that the "at-will" doctrine is not intended to protect the employer in that circumstance, and that summary judgment in this instance was improper. We disagree.
Where the term of employment is indefinite, the employment is terminable at the will of either the employer or the employee. Provenza v. Central & Southwest Services, Inc., 34,162 (La.App.2d Cir.12/15/00), 775 So.2d 84. Such a person has been characterized as an employee "at will." Brannan v. Wyeth Laboratories, Inc., 526 So.2d 1101, 1103-04 (La.1988). Absent a specific contract or agreement establishing a fixed term of employment, an "at will" employee is free to quit at any time without liability to his or her employer and, likewise, may be terminated by the employer at any time, provided the termination does not violate any statutory or constitutional provision. La. C.C. art. 2747; Bell v. Touro Infirmary, Inc., XXXX-XXXX (La.App. 4th Cir.03/21/01), 785 So.2d 926. Beyond that, the reasons for termination need not be accurate, fair or reasonable. Williams v. Delta Haven, Inc., 416 So.2d 637 (La.App. 2d Cir.1982). In fact, there need be no reason at all for termination. Simmons v. Westinghouse Elec. Corp., 311 So.2d 28 (La.App. 2d Cir.1975).
In this case, Acco needed only to show that Clark was an "at will" employee. It is undisputed that Clark was not subject to an employment contract containing a term of employment, and, thus, was an "at will" employee of Acco. As a result, it was incumbent upon Clark to then provide evidence *787 showing he could meet his evidentiary burden of trial. Here, all Clark could provide were his claims and accusations that Acco gave an erroneous reason for his termination. Even if Clark was correct and Acco gave a false reason for his termination, it is immaterial (as long as Acco's "false" reason for termination was not a pretext for a termination that would otherwise be illegal under federal or state law). The jurisprudence clearly states that an employer's reason for termination need not be accurate. Moreover, even if Clark was actually terminated for a deficiency in his work performance, such is a valid reason for termination in and of itself. Plummer v. Marriott Corp., 94-2025 (La.App. 4th Cir.04/26/95), 654 So.2d 843, writ denied, XXXX-XXXX (La.09/15/95), 660 So.2d 460.
Clark also maintains that his reason for termination is a disputed fact in these proceedings, making summary judgment inappropriate to this case. However, considering the applicable substantive law already discussed, the claimed dispute over this fact, i.e., the reason for his termination, does not affect the propriety of summary judgment here. Since either stated reason for Clark's termination by Acco was legal, the reason for his termination then becomes immaterial, as noted by the trial court. See, Ross v. Schwegmann Giant Super Markets, Inc., XXXX-XXXX (La.App. 1st Cir.05/14/99), 734 So.2d 910, 912, writ denied, XXXX-XXXX (La.10/01/99), 748 So.2d 444, determining that "[b]ecause it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case" (citation omitted).

Intentional Infliction of Emotional Distress at the Workplace
Clark also argues that the "at will" doctrine should not be extended to protect Acco for a length of time following his termination. He points to an incident that allegedly occurred where his photo was placed at the GM plant guard house with instructions to bar his admittance to the plant. This incident appears to be linked to his allegation that he suffered damage to his reputation, presumably as a result of Acco's alleged intentional infliction of emotional distress.
As the Louisiana Supreme Court has recognized, the basis for the tort of the intentional infliction of emotional distress in Louisiana is La. C.C. art. 2315. Nicholas v. Allstate Ins. Co., 1999-2522 (La.08/31/00), 765 So.2d 1017, citing, White v. Monsanto, 585 So.2d 1205 (La.1991). In order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. Id., at 1022. Although recognizing a cause of action for intentional infliction of emotional distress in a workplace setting, this state's jurisprudence has limited the cause of action to cases which involve a pattern of deliberate, repeated harassment over a period of time. Id., at 1026-27, citing White, 585 So.2d at 1205; Maggio v. St. Francis Med. Ctr., Inc., 391 So.2d 948 (La.App. 2d Cir.1980), writ denied, 396 So.2d 1351 (La. 1981). The distress suffered by the employee must be more than a reasonable person could be expected to endure. Moreover, the employer's conduct must be intended or calculated to cause severe emotional distress, not just some lesser degree of fright, humiliation, embarrassment or worry. Id., at 1027, citing, White, 585 So.2d at 1210.
In this case, Clark has come far short of showing any facts that could support a *788 claim of intentional infliction of emotional distress in his workplace or any damage to his reputation. There is no proof that Acco's "conduct was extreme and outrageous," in that Clark failed to offer any proof that an Acco employee was responsible for posting his photograph at the guard house (which photograph was removed), or that the incident somehow damaged his reputation. Whereas Clark claims to have suffered "damage to his reputation," he offers no such proof of said damage. Moreover, within a week of his termination by Acco, he obtained employment with another subcontractor at the GM plant. Clark only presents hypothetical scenarios and speculation, with no proof regarding this claim. He clearly failed to produce factual support sufficient to establish an ability of satisfying his evidentiary burden of proof at trial on this issue.

CONCLUSION
For the foregoing reasons, the judgment of the trial court granting Acco System Inc.'s motion for summary judgment is affirmed, with all costs of this appeal assessed to Floyd R. Clark.
AFFIRMED.